UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BERYL ANN WRIGHT, | No.  4:16-CV-5155-EFS |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND FOR EMEGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| JPMORGAN CHASE BANK, N.A. et al., | |
| Defendants. | |

Before the Court, without oral argument, is Plaintiff Beryl Ann Wright's Motion to Remand Action to State Court and for Emergency Temporary Restraining Order and OSC Preliminary Injunction, ECF No. 14. On December 2, 2016, Defendant JPMorgan Chase Bank removed this civil lawsuit to federal court. ECF No. 1. In her motion, Plaintiff objects to this removal and also requests injunctive relief to prevent a foreclosure sale of her home.[1] Having reviewed the pleadings and the file in this matter, the Court is fully informed and

---

[1] It is unclear to the Court whether the property at issue in this case is owned by Ms. Wright or by her son, Anthony Malveto. As explained below, the mortgage documents are in Mr. Malveto's name. Ms. Wright declares, however, that she owns the property in fee simple absolute with her son. *See* ECF No. 1-1 at 1; ECF No. 14-1 at 32. When the Court uses the term "her home" or variants of that term, the Court refers only to Ms. Wright's purported interest in the property, while recognizing that there is no documentation in the record to support that purported interest.

ORDER - 1

1  denies both Plaintiff's motion to remand and her request for

2  injunctive relief.

3  **I.    BACKGROUND**

4      On October 19, 2016, Beryl Ann Wright, a resident of College

5  Place, Washington, filed a civil complaint in Walla Walla County

6  Superior Court, Case No. 16-2-00708-3, alleging that Defendants are

7  unlawfully attempting to foreclose on Ms. Wright's house and have

8  engaged in unfair and deceptive practices. ECF No. 1-1. Ms. Wright's

9  allegations regarding the unlawful nature of the foreclosure rely in

10 part on her claim that the mortgage agreement was rescinded under the

11 Truth in Lending Act (TILA), but Defendant JPMorgan Chase disregarded

12 the rescission, and the Defendants continued in "wrongful and unlawful

13 collection" on the mortgage. ECF No. 1-1 at 10. Ms. Wright also claims

14 that the Defendants engaged in "unfair and deceptive acts and

15 practices" and that no valid mortgage contract exists regarding her

16 property. ECF No. 1-1 at 145. Although Ms. Wright does not expressly

17 make a claim under the Washington Consumer Protection Act (WCPA), RCW

18 19.86, her claim of unfair and deceptive acts and practices mirrors

19 some of the language in that Act. Ms. Wright also uses the term

20 "Consumer Protection Act" in one instance. ECF No. 14 at 3. Construing

21 Ms. Wright's claim liberally, as a pro se plaintiff, the Court finds

22 that Ms. Wright has alleged violations of the WCPA. Based on her

23 claims, Ms. Wright seeks a preliminary injunction and a permanent

24 injunction preventing foreclosure on her house and requiring the

25 reversal of negative credit reports, return of all payments made on

26 the mortgage, payment for damages, and legal fees. ECF No. 1-1 at 16.

Defendant JPMorgan Chase's removal of this action followed. ECF No. 1. On December 15, 2016, Ms. Wright filed the instant Motion to Remand to State Court and for Emergency Temporary Restraining Order and OSC Preliminary Injunction. ECF No. 14. Ms. Wright argues that this Court does not have jurisdiction over her land and lacks personal jurisdiction over her and subject matter jurisdiction over this case. ECF No. 14 at 3. She also argues that Defendants removed this action in bad faith. ECF No. 14 at 6.

## II.   <u>STANDING</u>

As an initial matter, the Court must address whether Ms. Wright has standing to bring this claim in federal court. Article III of the Constitution limits a federal court's judicial power to "cases" and "controversies." U.S. Const. art. III. To ensure that a federal court exercises its power over only a case or controversy, a plaintiff must have standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish this standing, a plaintiff must show (1) an actual or imminent injury that is concrete and particularized ("injury-in-fact"), (2) a causal connection between the injury-in-fact and challenged conduct, and (3) a substantial likelihood that the relief requested will prevent or redress the injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Covington v. Jefferson Cty.*, 358 F.3d 626, 637-38 (9th Cir. 2004).

In this case, it is not immediately clear that Ms. Wright has a legally protected interest in the property at issue. She is not named in, and her signature does not appear on, the mortgage note or the deed. Instead, Ms. Wright's son, Anthony John Malveto, is the party

named in those documents. *See* ECF Nos. 9-1 & 9-2. The Court therefore finds that Ms. Wright likely could not bring a claim under TILA based on the mortgage agreement, to which she was not a party. *See In re Crevier*, 820 F.2d 1553, 1555 (9th Cir. 1987)(noting that a lower court employed the "judicially imposed prudential rule of standing that bars a litigant from asserting the rights of others" to dismiss a TILA claim for lack of standing); *see also Frempong v. Nat'l City Bank of Ind.*, 452 F. App'x 167 (3d Cir. 2011) (holding that a plaintiff had "no direct interest in the property or the foreclosure action as a result of the fact that he was not contractually obligated to the mortgage," despite the fact that plaintiff lived on the property and his wife was the party named in the deed); *Mashburn v. Wells Fargo Bank, NA*, 2011 WL 2940363, *3 (W.D. Wash. July 19, 2011) ("Since Plaintiff Hayakawa was not an obligor on the loan and had no right of rescission, Plaintiff Hayakawa does not have standing to bring the present TILA claim.").

In this case, however, Ms. Wright is not asserting a claim under TILA, but is instead asserting a claim based on allegedly unlawful, unfair, and deceptive practices regarding the foreclosure on her house. The issue of prudential standing again arises, as there is no documentation indicating that Ms. Wright is the record owner of the property, and all evidence instead indicates that her son is the legal owner of the property. Nevertheless, when analyzing standing to contest forfeiture the Ninth Circuit has indicated, that "[a] claimant's 'unequivocal' assertion of ownership in the seized property, along with physical possession of the property at the time

of seizure, can overcome the summary judgment hurdle." *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaneigo*, 835 F.3d 1159, 1164–65 (9th Cir. 2016). The Court finds this reasoning instructive.

As to the property at issue here, Ms. Wright claims to be a "joint owner in fee simple with her Son." ECF No. 1-1 at 1; *see also* ECF No. 14-1 at 32 ("THIS CERTIFIES that Anthony John Malveto and Beryl Ann Wright are joint owners in fee simple absolute, as assignees for valuable consideration of the following-described personal and natural family homestead . . . ."). Ms. Wright also seems to have physical possession of the property at issue. If Ms. Wright has an ownership interest, a possessory interest, or both, in the property, based on an agreement with her son or otherwise, that interest is likely sufficient for standing purposes. *See Gibson v. PNC Bank Nat'l Assoc.*, 2016 WL 7131518, at *1 (9th Cir. Dec. 7, 2016) (unpublished) (holding that a Plaintiff "has standing to challenge the foreclosure and sale based on the property interest he acquired via his quitclaim deed" despite not being a party to the note or deed foreclosed upon); *see also Hurst v. Fed. Nat'l Mortg. Ass'n*, 642 F. App'x 533, 537 (6th Cir. 2016) (holding that a plaintiff had standing to contest a foreclosure where the plaintiff claimed that she had the right to purchase the property at the redemption price based on property or inheritance rights).[2]

---

[2] In *Hurst*, the Sixth Circuit noted that "the facts alleged in the complaint render the legitimacy of Plaintiff's interest — as well as the allegedly defective foreclosure's effect on that interest — suspect. But those issues go more to the merits of Plaintiff's claims rather than her standing to bring them." 642 F. App'x at 537.

Based on that reasoning, Ms. Wright satisfies the elements of standing here: (1) she would suffer an imminent, legally protected injury if her property rights were impaired by foreclosure; (2) Defendants' foreclosure attempts are the cause of that imminent injury; and (3) the Court could redress the injury by granting Ms. Wright's claim for injunctive relief to prevent foreclosure. The Court therefore finds that Ms. Wright has standing to bring this claim in federal court.

### III.  <u>MOTION FOR WITHDRAWAL AND MOTION TO STRIKE</u>

Ms. Wright has filed two additional motions relevant to her motion to remand and for preliminary injunction that can be disposed of prior to addressing the substantive issues of that motion. On January 5, 2017, Ms. Wright filed a Notice of Withdrawal and Withdrawal of Motion for TRO and OSC Re: Preliminary Injunction and Proposed Order, by Affidavit. ECF No. 21. The Clerk's Office construed this filing as a Motion for Withdrawal. In this filing, Ms. Wright requests withdrawal of the proposed orders she attached to her motion to remand and also appears to request withdrawal of the portion of her remand motion requesting injunctive relief. Ms. Wright indicates that she requests withdrawal because she does not believe that the Court has jurisdiction to grant such relief. In the motion for withdrawal, however, Ms. Wright also seems to ask the Court to exercise whatever ability it has to grant injunctive relief:

> If this court has further restraining and enjoining powers
> without jurisdiction and venue, in that instance only,
> without waiving any rights in law and equity, I invoke this
> court to exercise such power to order defendants to cease

ALL collection activities described in my proposed order
pending remand . . . .

ECF No. 21 at 3. This conditional language makes Ms. Wright's motion to withdraw somewhat unclear. Still, based on the above-quoted statement, it appears clear to the Court that Ms. Wright continues to request that the Court grant injunctive relief to the extent possible.

Because the Court finds that it has jurisdiction over this case, as outlined below, the Court understands Ms. Wright to continue to request injunctive relief. Accordingly, the Court denies Ms. Wright's motion to withdraw her request for injunctive relief as moot, finding that the request to withdraw was conditional on a finding that the Court did not have jurisdiction. Because the Court denies injunctive relief, as outlined below, Ms. Wright's request to withdraw her proposed orders granting such relief is also denied as moot.

In addition, on January 20, 2017, Ms. Wright filed a Motion to Strike the request for oral argument included in her Reply regarding the Motion for Remand. ECF No. 27. In Ms. Wright's Motion for Remand, ECF No. 14, she did not elect oral argument. Nor did Chase elect oral argument in its Response. *See* ECF No. 19. Under Local Rule 7.1(h)(3), oral argument was therefore waived, and a party would be required to file a motion in order to elect oral argument. Accordingly, Ms. Wright's inclusion of the phrase "oral argument requested" in the caption to her Reply was insufficient to elect oral argument and need not be stricken. The Motion to Strike is therefore denied as moot.

//

/

ORDER - 7

#### IV.    <u>REMAND MOTION</u>

Turning to Ms. Wright's Motion to Remand, 28 U.S.C. § 1447(c) provides, "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c).  Ms. Wright timely filed her motion to remand; her removal objections were filed on December 15, 2016, less than thirty days after the removal. Although JPMorgan Chase's removal of this action appears unfair from Ms. Wright's perspective, the Court finds that removal is permitted by federal law. For the reasons outlined below, the Court denies Ms. Wright's Motion to Remand.

**A.    Federal Subject Matter Jurisdiction**

A state court defendant may remove to federal court any state court action that could have been brought under the original jurisdiction of the federal court — that is, claims based on a federal question or involving diversity of citizenship. 28 U.S.C. § 1441. Federal question subject matter jurisdiction exists if the civil action arises "under the Constitution, laws, or treaties of the United States." *Id.; see also* 28 U.S.C. § 1331. "[A] case may arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Int'l Union of Operating Eng'rs v. Cty. of Plumas*, 559 F.3d 104, 1044 (9th Cir. 2009) (quoting *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 808 (1986)) (internal quotation marks omitted). Diversity of citizenship subject matter jurisdiction exists if the amount in controversy is greater than $75,000 and the parties are diverse. *Id.;*

28 U.S.C. § 1332. State law claims over which a federal court would not have original jurisdiction may also be addressed by a federal court if the state law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. The removing defendant has the burden of establishing federal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

Here, federal question subject matter jurisdiction exists because Ms. Wright's claims, as alleged in her complaint, require interpretation of TILA, a federal statute. She argues that the Defendants are attempting to unlawfully foreclose on her house. ECF No. 1-1. This claim is based on the facts recited in her complaint, including statements such as, "On 5/13/2015, the hearsay note & DT [deed of trust] were rescinded under the Truth In Lending Act, Title 15 United States Code (USC) Chapter 41, specifically § 1635," "Chase ignored, neglected, and disregarded the TILA rescission and the general claims cancellation," and "Chase and QLSCW continued ongoing wrongful and unlawful collection on the rescinded, cancelled hearsay note & DT." ECF No. 1-1 at 10. Ms. Wright also noted in her complaint that: "the hearsay note & DT alleged to represent the alleged debt and basis of the intended foreclosure are in contravention of Washington and *federal law*." ECF No. 1-1 at 7 (emphasis added). In her motion for remand, Ms. Wright again indicated her claim's partial basis in TILA, stating: "Plaintiff moves this Court to take mandatory judicial notice

of its duty to enforce the TILA rescission, now that it is in front of it by the defendants' hands." ECF No. 14 at 6. Plaintiff's claims require that the Court determine whether a valid mortgage exists — including whether a valid rescission took place under the federal TILA — in order to determine whether the foreclosure is lawful. Accordingly, this civil action turns on the interpretation of a law of the United States, and federal question subject matter jurisdiction exists. *See* 28 U.S.C. § 1331.

There is also supplemental jurisdiction over the state law claims under the WCPA based on supplemental jurisdiction. Both a finding as to whether there was a valid rescission under TILA and a finding as to whether the WCPA was violated are essential to determining whether the foreclosure at issue is lawful. In addition, both the TILA rescission and the WCPA questions involve assessment of the mortgage transaction and any errors or violations in the execution of that transaction. The Court therefore finds that the federal issues and state law issues "form part of the same case or controversy." 28 U.S.C. § 1367.

The Court need not reach the question of whether diversity jurisdiction also exists in this case, although the Court notes that the amount in controversy requirement is satisfied here, as the remaining balance of the mortgage is greater than $75,000. *See* ECF No. 14-1 at 21. In addition, diversity of citizenship clearly exists for all Defendants apart from Quality Loan Service Corporation of Washington. The only question, therefore, would be whether Quality Loan Service Corporation of Washington is a nominal Defendant, as

alleged by Defendant JPMorgan Chase, *see* ECF No. 19 at 5. The Court need not decide that issue at this time.

To the extent Ms. Wright requests to amend her complaint in order to eliminate federal subject matter jurisdiction, ECF No. 26 at 8, that request is denied. The Ninth Circuit has made clear that "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016). "[A] plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based." *Id.*

**B.   Personal Jurisdiction**

The Court also has personal jurisdiction over Ms. Wright. The record indicates that Ms. Wright is physically present in the Eastern District of Washington and has resided in the district at all times relevant to this case. As a result, in personam jurisdiction exists. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 925 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"); *Burnham v. Sup. Ct. of Cal.*, 495 U.S. 604, 619 (1990) ("[J]urisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'"). The Court also has jurisdiction over the property at

issue in this case, as it is located in the Eastern District of Washington.

**C.    Venue**

In addition, venue is appropriate in the Eastern District of Washington. For cases that have been removed to federal court, venue is governed by 28 U.S.C. § 1441. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953). Section 1441 states:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The Eastern District of Washington is the federal district associated with the state court where Ms. Wright filed her complaint, so venue is appropriate in this Court based on Ms. Wright's original choice of filing in Walla Walla County.

**V.    MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

In her motion, Ms. Wright also requested both a temporary restraining order and a preliminary injunction, with the goal of preventing Defendants from foreclosing on her house.[3] The analysis for issuance of a preliminary injunction is generally as follows: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

---

[3] The foreclosure was originally scheduled for December 15, 2016, ECF No. 14-1 at 2, but Plaintiff has since indicated that the sale is now scheduled for February 10, 2017, ECF No. 21 at 3.

the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Under this inquiry, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (internal quotation marks omitted). If a court finds, however, that there is a complete lack of probability of success on the merits, no further findings are necessary. *Daniels v. Cmty. Lending, Inc.*, 621 F. App'x 427, 427 (9th Cir. 2015) (citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,* 654 F.3d 989, 993–94 (9th Cir. 2011) (per curiam); *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007)).

The Ninth Circuit has noted that the analysis for issuance of a temporary restraining order is "substantially identical" to the analysis for issuance of a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The primary differences between a temporary restraining order and a preliminary injunction are the duration of the injunction and the availability of argument prior to issuance of the injunction. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002). A temporary restraining order may last no longer than 14 days and argument is not required prior to issuance of the order. Fed. R. Civ. P. 65. In this case, Ms. Wright is requesting ongoing relief, and the parties have had time to fully brief the issue, so the Court will treat the request as one for a preliminary injunction.

The Court finds that, at this juncture, Ms. Wright has not demonstrated a likelihood of success in this case on any issue that

would affect the validity of the foreclosure. The Court therefore denies Plaintiff's motion for injunctive relief without reaching the other preliminary injunction factors. *See Daniels*, 621 F. App'x at 427 ("The district court did not abuse its discretion by denying plaintiffs' motion for a preliminary injunction after . . . concluding that plaintiffs had failed to establish a likelihood of success on the merits with regard to any claim that could affect the validity of the foreclosure.").

First, Ms. Wright has not provided evidence of a valid rescission under TILA. TILA provides borrowers with the right to rescind certain consumer transactions. 15 U.S.C. § 1635(a). The rescission right extends to "each consumer whose ownership interest is or will be subject to the security interest." 12 C.F.R. § 226.15(a). Under 15 U.S.C. § 1635(f): "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor." Consummation is defined under Regulation Z as the point when the borrower becomes contractually obligated on the loan. 12 C.F.R. § 226(a)(13). The Ninth Circuit has explained that when a borrower is contractually obligated is defined by state law. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989). In Washington, a contract is created when the essential elements of a contract, "the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all

jurisdictions) the price or consideration," have been included in the agreement. *DePhillips v. Zolt Const. Co., Inc.*, 959 P.2d 1104 (Wash. 1998).

Ms. Wright's son, Mr. Malveto, signed the mortgage documents on August 1, 2003. ECF Nos. 9-1 & 9-2. There is no evidence to support a finding that any essential contract terms were missing from the documents. According, the Court finds that the mortgage transaction was likely consummated shortly after its execution, as demonstrated by the fact that Mr. Malveto made payments on the loan between 2003 and 2011. ECF No. 9-4 at 3. Ms. Wright claims that the transaction was rescinded on May 13, 2015. ECF No. 14 at 10; *see also* ECF No. 14-1 at 31. The statutory time period for rescission concluded long before May 13, 2015, making any rescission at that time ineffective. *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("[S]ection 1635(f) represents an 'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction." (quoting *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986))).

Even if the notice of rescission had been sent within the statutory time period, Plaintiff presents no evidence of a TILA violation in the creation of the mortgage agreement. Mr. Malveto apparently attempted to rescind the loan transaction based on the following:

> [U]nder the three day rule, the three year limitation, and under the usury, extortion, lack of disclosure, misrepresentation, ultra vires, unconscionability, unfair trade practice, and deprivation of fundamental human rights, including, but not limited to, the intangible

rights to receive honest services and to be free from being deceived into violation of the state of Washington Constitution Article 12 Section 11 and general claims theories and causes of action for deceptive and unfair business practices have made my alleged obligation to be void and unenforceable from its first alleged inception. By failing to disclose that the "borrower" is not a consumer for personal, family or household purposes, as myself seeking a consumer loan solely for those purposes, and by failing to disclose the true lender and using subterfuge to hide the fact that the "lender at closing was paid to pose as the lender when in fact an undisclosed unregistered third party had rented the charter or lending license of the "lender", and for these facts constituting the creation of an unconscionable contract the limitation on my right to rescind was extended indefinitely. For refusal, failure, and/or neglect to provide all lawfully required loan disclosures form inception of the original alleged "loan", I, Anthony John Malveto, do hereby rescind/cancel "loan number 48580583" and all pertaining to and in relation thereto every time, in every place, by every device, to/for/by all persons, and for all purposes, including but not limited to all related prior and/or subsequent alleged loans, information, applications, modifications, business, instrument, document, alleged transactions, and all of every nature relevant thereto.

ECF No. 14-1 at 38-39. Mr. Malveto separately alleged appraisal fraud, fraud in the inducement, fraud in the execution, and usury. ECF No. 14-1 at 40-41. Most of these claims are not of the type for which rescission under TIlA would be allowed. *See* 15 U.S.C. § 1635; 12 C.F.R. §§ 226.18, 226.23(a)(3). In addition, at this time, there is no evidence in the record beyond the bare assertions of Ms. Wright and Mr. Malveto to support the alleged grounds for TILA rescission. The Court therefore finds that Ms. Wright is unlikely to succeed on the merits of her claim regarding TILA rescission.

In addition, neither Plaintiff nor her son has returned the loan proceeds from the mortgage transaction, and Plaintiff remains in possession of the property purchased with those loan proceeds. *See*

*Semar v Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 702 (9th Cir. 1986) ("Under a TILA rescission, the security interest is dissolved, the lender returns the borrower's payments, and the borrower returns the loan proceeds, less any finance or other charge." (citing 15 U.S.C. § 1635(b))). As a result, Mr. Malveto has not satisfied the borrower obligations that would have been required had a valid rescission occurred.

There is also no evidence in the record that either Ms. Wright or Mr. Malveto intends to return the loan proceeds. Instead, Ms. Wright's statements indicate that she believes no debt is owed to the Defendants by her or her son. *See, e.g.*, ECF No. 1-1 at 3 ("Chase and QLSCW continued ongoing wrongful and unlawful collection on the rescinded, cancelled hearsay not & DT."); ECF No. 1-1 at 7 ("[T]he facts obtained on the record by discovery will reveal . . . that the alleged note & DT were never in default."). A court need not approve a rescission if it is clear that the borrower will not satisfy its obligations upon rescission. *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003) ("[A] court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations.").

Second, to the extent Ms. Wright has stated a claim under the WCPA, Ms. Wright has not provided evidence of a violation of that Act. The statutory time period for a WCPA claim concluded long before the filing of this action. *See* RCW 19.86.120 ("Any action to enforce a claim for damages under RCW 19.86.090 shall be forever barred unless commenced within four years after the cause of action accrues[.]"). In

addition, Ms. Wright has not provided evidence to support her claim for violation of the WCPA. In the complaint, Plaintiff argues that the mortgage transaction was invalid because "a. there is no document signed by both parties; b. they are adhesion contracts; c. there was no bargaining over terms and conditions; d. there was no meeting of the minds into mutually agreed terms and conditions; e. the 'consideration' which each party was to provide under the contract was never mutually agreed to, and/or was never performed." ECF No. 1-1 at 8. Ms. Wright has not, however, provided evidence to support these allegations. In addition, Defendant Chase has raised the argument that Ms. Wright is barred from asserting the WCPA claims based on res judicata stemming from a prior Washington State Court judgment. *See* ECF No. 9 at 10. For these reasons, based on the evidence currently before it, the Court finds that Ms. Wright is unlikely to succeed on her WCPA claims.

Third, because at this time there is no evidence of a valid rescission under TILA and there is no support in the record for Ms. Wright's claim that the mortgage agreement was an invalid contract under the WCPA or otherwise, Ms. Wright has failed to establish that the foreclosure is unlawful. If the mortgage agreement was not rescinded and was otherwise valid, then the holder of the mortgage note would be authorized to foreclose on the property upon the borrower's default. Ms. Wright does not seem to contest the allegation that neither she nor Mr. Malveto has been making payments on the mortgage, but instead argues only that they are not required to make such payments. This failure to make payments, without a valid

rescission or invalidation of the mortgage, appears to constitute default sufficient to justify foreclosure.

The Court finds that, at this time, Ms. Wright has failed to establish a likelihood of success on the merits that would affect the validity of the foreclosure action. This finding alone is sufficient to justify denial of her request for a preliminary injunction.

In addition to her failure to prove a likelihood of success on the merits, the Court finds that Ms. Wright is also barred from equitable relief by the doctrine of unclean hands. *Silvas v. G.E. Money Bank*, 449 F. App'x 641, 644 (9th Cir. 2011). In *Silvas*, the Ninth Circuit affirmed the denial of a preliminary injunction to prevent foreclosure based on the doctrine of unclean hands, noting that the Plaintiff "wishes to continue to live in her house, but she has not offered to make any payments on her loan, she did not tender any payments when she sought rescission, nor is she able to repay the loan at this time." *Id.* As explained above, because Ms. Wright maintains possession of the property purchased with the loan proceeds from the mortgage transaction with Defendants, and neither she nor Mr. Malveto have repaid the loan proceeds or offered to do so, Ms. Wright cannot now seek judicial interference to prevent sale of the property.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion to Remand Action to State Court and for Emergency Temporary Restraining Order and OSC Preliminary Injunction, **ECF No. 14,** is **DENIED.**

2.  Plaintiff's construed Motion for Notice of Withdrawal and Motion for Withdrawal of Motion for TRO and OSC RE:

1    Preliminary Injunction and Proposed Order, **ECF No. 21,** is

2    **DENIED AS MOOT.**

3    **3.**    Plaintiff's Motion to Strike, **ECF No. 27,** is **DENIED AS**

4    **MOOT.**

5    **IT IS SO ORDERED.**    The Clerk's Office is directed to enter this

6    Order and provide copies to all counsel.

7    **DATED** this  2nd  day of February 2017.

8

9                            s/Edward F. Shea
                            ─────────────────────
                              EDWARD F. SHEA
                        Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26